IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TOUCAN PARTNERS, LLC,
a Florida Limited Liability Company
NARCONON SPRING HILL, INC.,
a Florida Corporation,                                    Case No.:

      Plaintiffs,

v.

HERNANDO COUNTY, FLORIDA,
a political subdivision of the State of Florida,

      Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Toucan Partners, LLC ("Toucan") and Narconon Spring Hill, Incorporated ("Narconon"), through their undersigned counsel, hereby file this Complaint and sue Hernando County, Florida (the "County").

## ALLEGATIONS COMMON TO ALL COUNTS

### The Parties, Jurisdiction, and Venue

1. Toucan is a Florida limited liability company that owns land in Hernando County (the "Property") on which a drug and alcohol rehabilitation facility is located, commonly known as the Suncoast Rehabilitation Center (the "Suncoast Rehabilitation Center").

2. Narconon is a Florida corporation with its principal place of business located in Hernando County, Florida. Narconon operates the Suncoast Rehabilitation Center by providing drug and alcohol substance abuse treatment to individuals through residential treatment services.

3. The County is a political subdivision of the State of Florida and is organized under the laws of the State of Florida.

4. This Court has jurisdiction over this action pursuant to title 28 United States Code section 1331 because the claims herein involve federal questions arising under federal anti-discrimination laws, namely the Fair Housing Act ("FHA"), as amended, 42 U.S.C. §§ 3601 *et seq.* (2011) and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.* (2011).

5. Venue is proper pursuant to title 28 United States Code section 1391 (2011) because the claims alleged herein arose in Hernando County, which is located in the boundaries of the Tampa Division of the Middle District of Florida.

### The Original Special Exception Use Permit

6. Plaintiffs have historically owned and operated the Suncoast Rehabilitation Center pursuant to a special exception use permit (the "Original Special Exception Permit") that was issued to its predecessor owner of the subject property and facility. The County's Planning and Zoning Commission ("PZC") issued the Original Special Exception Permit on January 27, 1992, which authorized an adult congregate living facility ("ACLF").

7. In conjunction with the Original Special Exception Permit, a site plan was approved by the County. The approved site plan allowed the construction of a maximum of fifteen (15) buildings, which could house one hundred and fifty (150) persons.

8. The Property owned by Plaintiffs is approved for a total of five (5) of the fifteen (15) buildings for congregate living. After approval of the Original Special Exception Permit in 1992, two (2) of the five (5) buildings were constructed for congregate living. The remaining three buildings remained to be built at some point in the future under the Original Special Exception Permit.

### The 2008 Purchase by Toucan

9. In 2008, Toucan contracted to purchase the Property in order to operate a substance abuse rehabilitation facility properly licensed by the Florida Department of Children and Family Services pursuant to chapter 397, Florida Statutes and Florida Administrative Code 65D, in the two (2) buildings described in paragraph 8 above.

10. Drug and alcohol substance abuse rehabilitation facilities are allowed as special exceptions in all zoning districts.

11. As part of its due diligence prior to closing on the contract for purchase, Toucan requested from the County's Zoning Administrator a zoning verification letter that a drug and alcohol substance abuse rehabilitation facility was a proper use of the Property pursuant to, and in conformity with, the Original Special Exception Permit.

12. The Zoning Administrator confirmed in writing (the "Zoning Determination Letter") to Toucan that a drug and alcohol substance abuse rehabilitation facility was a proper use of the Property pursuant to, and in conformity with, the Original Special Exception Permit.

13. In reliance on the representations contained in the Zoning Determination Letter, Toucan closed on the transaction and purchased the Property.

### The Suncoast Rehabilitation Center

14. Toucan then converted the facility located on the Property from a senior oriented group residential ACLF to a substance abuse rehabilitation ACLF (i.e., the Suncoast Rehabilitation Center) and has used the Property continuously for that use.

15. Narconon leases the Property from Toucan and pays Toucan a reasonable monthly rent for use of the Property. Narconon acted (and continues to act) as the entity to provide rehabilitation services to recovering patients at the Suncoast Rehabilitation Center.

16. At the Suncoast Rehabilitation Center, patients receive rehabilitation treatment while living with other similarly situated individuals (i.e., recovering addicts). The patients have their own bed, enjoy meals together, and work collectively as a family unit to recover from the disease of addiction.

17. Living together collectively as a group helps to reduce recidivism and places patients in a position to recover at a more successful rate.

### The Application To Expand The Suncoast Rehabilitation Center and Approval by the Planning and Zoning Commission

18. After operating the Suncoast Rehabilitation Center for a year, the demand for additional beds to serve patients increased to the point that Toucan sought to expand the Suncoast Rehabilitation Center under the terms and conditions of the Original Special Exception Permit.

19. In early 2009, Toucan engaged a general contractor to build the additional three (3) of the five (5) previously authorized buildings pursuant to the Original Special Exception Permit.

20. After learning of this proposed expansion, the County informed Toucan that it would need to apply to the PZC for a renewed special exception use permit because the authority to construct ACLF buildings on the Property had expired five (5) years after the issuance of the Original Special Exception Permit.

21. On January 28, 2009, Toucan complied with the County's directions by submitting an application for a special exception use permit (the "Amended Special Exception Permit") to construct an additional three (3) buildings on the Property to expand from a 22 bed facility to a total of 54 beds.

22. The proposed expansion was consistent with the already allowable capacity contemplated by the Original Special Exception Permit.

23. The County's senior staff reviewed the application for the new special exception permit and determined the contemplated expansion to be: (a) consistent, and compliant, with the residential land use policies and mapping criteria both of the County's adopted Comprehensive Plan and of its Land Development Regulations; (b) well buffered as proposed; (c) compatible with the residential land uses in the neighborhood; (d) not adverse to the public interest; and (e) appropriate to be recommended for approval by the PZC, subject to compliance by Toucan with certain recommended performance conditions.

24. On April 13, 2009, the PZC conducted a hearing on Toucan's application seeking approval of the Amended Special Exception Permit.

25. The PZC unanimously approved the Special Exception Application, and issued the Amended Special Exception Permit.

26. By the terms of the County's Land Development Regulations, the PZC's decision was a final one unless the Board of County Commissioners (the "BOCC") reviewed the PZC's decision through an appeal by interested party or through a BOCC initiated review.

### The BOCC's response to Community Opposition and Revocation of Amended Special Exception Permit

27. Soon after the April 13, 2009 PZC approval, County citizens wrote and called the members of the BOCC and other County officials urging them to deprive Toucan the right to expand the Suncoast Rehabilitation Center.

28. On April 28, 2009, the BOCC voted to "review" the otherwise final PZC approval of the Amended Special Exception Permit.

29. The BOCC did so without any interested party seeking formal administrative review; rather, the BOCC "called up" the Amended Special Exception Permit for a hearing in order to reverse the decision by the PZC and support the criticisms, complaints, and objections received from the County's citizens.

30. On June 9, 2009, the BOCC conducted a hearing to review the PZC's approval of the Amended Special Exception Permit.

31. Neighbors appeared to oppose the Amended Special Exception Permit, and offered unsubstantiated, non-factual reasons as to why the BOCC should revoke the Amended Special Exception Permit.

32. The objections by the neighbors were based on prejudices towards recovering addicts and how the neighbors did not want a facility housing recovering patients located on the Property.

33. With respect to the nature of the requested Amended Special Exception Permit, and its impact on the neighborhood, the County's professional staff pointed out that the neighborhood was already substantially built out at the time the PZC approved the Original Special Exception Permit. Therefore, the maturity, the nature, and the character of the neighborhood has not changed so as to now justify revocation of the Amended Special Exception Permit that the PZC was approved.

34. Ignoring (i) the staff's analysis about how the expansion of the Suncoast Rehabilitation Center was compatible with the surrounding neighborhood; (ii) the staff's position about the application for the Amended Special Exception Permit; and (iii) the PZC's approval of the Amended Special Exception Permit, the BOCC voted to reverse and revoke the PZC's April 13, 2009, approval and issuance of the Amended Special Exception Permit. The BOCC further

directed its staff to prepare a final order to implement that vote.

35. The basis for the BOCC's actions was that patients recovering from the disease of addiction should not be living at the Suncoast Rehabilitation Center.

36. Such a basis was contrary to the evidence presented to the BOCC, both by the County's own staff (including the Staff Report and Recommendation for approval by the PZC, and the record of the PZC approval, of the Amended Special Exception Permit), and the representatives on behalf of Toucan.

37. On June 23, 2009, the Board adopted Resolution 2009-141 as its Final Order reversing and revoking the PZC's April 13, 2009, approval and issuance of the Amended Special Exception Permit.

## December 2009 BOCC Actions

38. In an effort to further restrict and deprive Toucan of the rights that it enjoyed under the Original Special Exception Permit, the BOCC took it upon itself to adopt an ordinance in December 2009 that potentially has the effect of eliminating all rights under the Original Special Exception Permit that belongs to Toucan.

39. The BOCC's actions in December 2009 was a separate and distinct measure by the County to limit the operations of the Suncoast Rehabilitation Center, which may prevent patients from receiving care on the Property for their disease of addiction to drugs and alcohol.

40. In sum, the County has taken measures through its regulatory powers to discriminate against Plaintiffs.

41. As a result of the actions described herein, Plaintiffs have been forced to turn away numerous clients requesting substance abuse rehabilitation and treatment because of the County's actions.

42. All conditions precedent to brining this action have occurred, and any future actions by Plaintiffs would be futile.

43. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorneys' fees, costs and expenses paid by the County.

### COUNT I-VIOLATION OF FEDERAL HOUSING ACT
### (Damages for Denial of a Reasonable Accommodation)

44. Plaintiffs re-allege paragraphs 1 through 43.

45. This is an action for damages under the FHA for the County's denial of a reasonable accommodation.

46. The buildings and structures to house the patients of the Suncoast Rehabilitation Center are dwellings.

47. The patients of the Suncoast Rehabilitation Center are handicapped.

48. The application to the County seeking approval for the Amended Special Exception Application constitutes a request for a reasonable accommodation under the FHA.

49. By its refusal to approve the application for the Amended Special Exception Application, the County refused Plaintiffs a reasonable accommodation under the FHA.

50. The County made its decision because of the disabilities of the Suncoast Rehabilitation Center residents and prospective residents, in violation of the FHA.

51. Plaintiffs have suffered damages as a result of the Defendant's conduct.

**WHEREFORE**, Plaintiffs pray that this Court enter final judgment:

    a. Declaring that the actions of the County described herein constitute a violation of the FHA;

    b. Requiring such action by the County as may be necessary to restore all persons

aggrieved by the County's discriminatory housing practices to the position they would have occupied but for such discriminatory conduct;

c.  Awarding monetary damages;

d.  Awarding reasonable attorney's fees, costs, pre- and post- judgment interest, to the Plaintiffs; and

e.  Any further relief that would be just and appropriate under the circumstances.

## COUNT II-VIOLATION OF FEDERAL HOUSING ACT
### (Damages for Intentional Discrimination)

52. Plaintiffs re-allege paragraphs 1 through 43.

53. This is an action for damages under the FHA for the County's intentional discrimination.

54. The County has discriminated against Plaintiffs because they are providing, and propose to provide additional, housing and treatment to individuals who are recovering from the disease of addiction to drugs and alcohol. By reversing and revoking the Amended Special Exception Permit, as previously approved by the PZC, the County has demonstrated its desire to single out, and discriminate against, the Suncoast Rehabilitation Center because of the patients and clientele that are being, and would be in the future, serviced and treated at the said facility.

55. The County would not be engaging in the above-described actions if Plaintiffs were not engaged in their present business operations.

56. The County would not be engaging in the above-described actions if the patients attending and residing at, and receiving treatment from, the Suncoast Rehabilitation Center were not recovering from addictions to alcohol and other, controlled substances.

57. Through this course of conduct, the County has violated Plaintiffs' rights under the FHA.

58. Plaintiffs have been damaged by the County's actions.

**WHEREFORE**, Plaintiffs pray that this Court enter final judgment:

a. Declaring that the actions of the County described herein constitute a violation of the FHA;

b. Requiring such action by the County as may be necessary to restore all persons aggrieved by the County's discriminatory housing practices to the position they would have occupied but for such discriminatory conduct;

c. Awarding monetary damages;

d. Awarding reasonable attorney's fees, costs, pre- and post- judgment interest; and

e. Any further relief that would be just and appropriate under the circumstances.

## COUNT III- VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Damages for Denial of a Reasonable Accommodation)

59. Plaintiffs re-allege paragraphs 1 through 43.

60. This is an action for damages under the ADA for the County's denial of a reasonable accommodation.

61. The patients of the Suncoast Rehabilitation Center are disabled.

62. The application to the County seeking approval for the Amended Special Exception Application constitutes a request for a reasonable accommodation under the ADA.

63. By its refusal to approve the application for the Amended Special Exception Application, the County refused Plaintiffs a reasonable accommodation under the ADA.

64. The County made its decision because of the disabilities of the Suncoast Rehabilitation Center residents and prospective residents, in violation of the ADA.

65. Plaintiffs have suffered damages as a result of the Defendant's conduct.

**WHEREFORE**, Plaintiffs pray that this Court enter final judgment:

    a.    Declaring that the actions of the County described herein constitute a violation of the ADA;

    b.    Requiring such action by the County as may be necessary to restore all persons aggrieved by the County's discriminatory housing practices to the position they would have occupied but for such discriminatory conduct;

    c.    Awarding monetary damages;

    d.    Awarding reasonable attorney's fees, costs, pre- and post- judgment interest, to the Plaintiffs; and

    e.    Any further relief that would be just and appropriate under the circumstances.

## COUNT IV-VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Damages for Intentional Discrimination)

66.    Plaintiffs re-allege paragraphs 1 through 43.

67.    This is an action for damages under the ADA for the County's intentional discrimination.

68.    The County has discriminated against Plaintiffs because they are providing, and propose to provide additional, housing and treatment to individuals who are recovering from the disease of addiction to drugs and alcohol. By reversing and revoking the Amended Special Exception Permit, as previously approved by the PZC, the County has demonstrated its desire to single out, and discriminate against, the Suncoast Rehabilitation Center because of the patients and clientele that are being, and would be in the future, serviced and treated at the said facility.

69.    The County would not be engaging in the above-described actions if Plaintiffs were not engaged in their present business operations.

70.    The County would not be engaging in the above-described actions if the patients attending and residing at, and receiving treatment from, the Suncoast Rehabilitation Center were not recovering from addictions to alcohol and other, controlled substances.

71. Through this course of conduct, the County has violated Plaintiffs' rights under the ADA.

72. Plaintiffs have been damaged by the County's actions.

**WHEREFORE**, Plaintiffs pray that this Court enter final judgment:

a. Declaring that the actions of the County described herein constitute a violation of the ADA;

b. Requiring such action by the County as may be necessary to restore all persons aggrieved by the County's discriminatory housing practices to the position they would have occupied but for such discriminatory conduct;

c. Awarding monetary damages;

d. Awarding reasonable attorney's fees, costs, pre- and post- judgment interest, to the Plaintiffs; and

e. Any further relief that would be just and appropriate under the circumstances.

### JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: June 20th, 2011

Ethan J. Loeb, Trial Counsel
Florida Bar No. 0668338
ethanl@bsbfirm.com
David Smolker, Trial Counsel
Florida Bar No. 349259
davids@bsbfirm.com
BRICKLEMYER SMOLKER & BOLVES, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602
Telephone: (813) 223-3888
Facsimile: (813) 228-6422
Attorneys for Plaintiff

and

Carole Joy Barice, Esquire
Florida Bar No. 0211079
carolebarice@mcgeemasonlaw.com
Joseph M. Mason, Jr., Esquire
Florida Bar No. 0108545
joemason@mcgeemasonlaw.com
McGee & Mason, P.A.
101 South Main Street
Brooksville, Florida 34601
Telephone: (352) 796-0795
Facsimile: (352) 796-0235
Attorneys for Plaintiff